# United States Court of Appeals
## For the First Circuit

No. 14-2161

JOSEPH LUND,

Plaintiff, Appellant,

v.

DANIEL HENDERSON; JOHN WALCEK; THOMAS JOYCE, in his capacity as
Chief of Wareham Police Department; and TOWN OF WAREHAM, MA,

Defendants, Appellees.

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

[Hon. Nathaniel M. Gorton, U.S. District Judge]

Before

Kayatta, Stahl, and Barron,
Circuit Judges.

Richard K. Latimer, for Appellant.
Jeremy Silverfine, with whom Deidre Brennan Regan and
Brody, Hardoon, Perkins & Kesten, LLP, were on brief, for
Appellees.

November 25, 2015

**KAYATTA**, **Circuit Judge**.  Joseph Lund claims that a Wareham police officer arrested him without probable cause and with excessive force while trying to disperse an unruly crowd on August 22, 2008.  Lund also claims that the police chief and the Town of Wareham ("the Town"), as the officer's superior and employer, respectively, were liable because they had known of, or recklessly disregarded, prior false arrests and use of excessive force by the arresting officer and other officers in the police department.

Prior to trial, Lund took the position that the jury needed to hear evidence that, if believed, would establish that one of the defendant officers, and others in the Town's police department, had acted improperly on other occasions in making arrests and using excessive force.  The district court decided that such evidence of prior alleged bad acts should not be heard by the jury adjudicating the claims against the two officers, but might well be admissible in adjudicating Lund's claim against the chief and the Town.  The district court therefore bifurcated the trial, requiring Lund to try first his claims against the individual officers.  A properly-instructed jury ultimately rejected those claims, and the district court thereupon dismissed the claims against the Town, rejecting Lund's efforts, post-trial, to add a new, previously-unpleaded claim.  For the following reasons, we now affirm.

## I. Background

On August 22, 2008, Wareham police officers John Walcek and Daniel Henderson separately responded to a disturbance in Wareham, Massachusetts. Lund was not involved in the original incident giving rise to the disturbance, but attracted Henderson's attention when he began arguing with another individual at the scene. Lund claims that Henderson arrested him without cause, and used excessive force in pushing him into a police vehicle. Henderson and Walcek claimed in their reports and at trial that it was Walcek who actually arrested Lund, with cause and without excessive force, for disturbing the peace and disorderly conduct.

The day after his arrest, Lund went to the hospital complaining of wrist pain. Doctors detected "two small well-corticated densities," which were consistent with an old injury. According to Lund, a physician named Gilson later diagnosed a shoulder injury that was the result of being "pushed into [a] car" and having his "arms twisted behind him." This statement is taken from Lund's "History of [his] Present Illness," which is based on information Lund told Dr. Gilson, rather than Dr. Gilson's own medical opinion or diagnosis. Dr. Gilson explicitly declined to give an opinion regarding the cause of Lund's injuries and stated that his symptoms may be related to degenerative disc disease

detected in his cervical spine.[1]  Dr. Gilson noted that although

new injuries can exacerbate symptoms of degenerative disc disease,

establishing a causal link between an injury and the symptoms is

difficult.

Lund thereafter sued Officers Henderson and Walcek,

alleging false arrest and false imprisonment; assault and battery;

intentional infliction of emotional distress; violation of 42

U.S.C. § 1983; violation of civil rights under Massachusetts

General Law, chapter 12, § 11I; malicious prosecution; and abuse

of process.  Lund's complaint also set forth two causes of action

against the police chief and the Town: negligent supervision and

violation of civil rights.

In the lead up to trial, Lund made clear his intention

to offer evidence that, in the ten years prior to Lund's arrest,

there were four occasions when citizens alleged false arrest or

use of excessive force by Henderson.  None of these prior

allegations resulted in any disciplinary action against Henderson.

At defendants' request, the district court ordered that none of

this evidence, or any other evidence of alleged wrongdoing by

Wareham officials on occasions other than Lund's arrest, would be

admissible against the two individual officers.  The district court

_____

[1]     At trial, Lund also acknowledged that he had suffered previous
back and neck injuries in a 1986 car accident.

also bifurcated trial of the claims against the two officers from trial of the claims against the Town and its police chief.

At the conclusion of the trial against the officers, the jury returned a verdict for the officers, concluding that neither Henderson nor Walcek had arrested Lund without probable cause, neither had used excessive force while arresting Lund, and neither had "abused process by causing a criminal charge of disorderly conduct and disturbing the peace to be brought against [Lund] following his arrest."  The Town thereupon moved for judgment dismissing the claims against it and its police chief.  Lund, in response, conceded that the adverse verdict on the claims against the two officers, unless reversed, defeated his claims against the chief and the Town as they were then pled.[2]  At the same time, he moved for leave to amend his complaint under Federal Rule of Civil Procedure 15(b)(2) to add a new "employee negligence" count against the Town under Massachusetts General Law, chapter 258, "to conform

---

[2]    In Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978), the Supreme Court stated that municipalities cannot "be held liable [under 42 U.S.C. § 1983] unless action pursuant to official municipal policy of some nature caused a constitutional tort." Id. at 691.  Therefore, because the jury found that the officers had not violated Lund's rights, the municipality itself could not be liable on the civil rights claim.  See City of L.A. v. Heller, 475 U.S. 796, 799 (1986) (per curiam).  Similarly, the claim that the chief and Town were vicariously liable for torts by the officers due to negligent supervision was necessarily defeated by the jury's finding of no tortious conduct.

to the evidence and to appropriately determine the merits of the action as to the Town of Wareham's liability."

The district court entered judgment for all defendants, while also denying Lund's motion for leave to amend his complaint because (1) Lund provided "no good reason for his three-year delay in seeking leave to amend;" (2) his theory of negligence was barred by Massachusetts General Law, chapter 258, § 10; and (3) there was insufficient evidence of negligence at trial.  The district court also denied Lund's subsequent motion for a new trial.  This appeal ensued.

## II.  Analysis

Trial management rulings of the type at issue on this appeal are "peculiarly within the discretion of the trial court." Gonzalez-Marin v. Equitable Life Assurance Soc'y of U.S., 845 F.2d 1140, 1145 (1st Cir. 1988) (motion for separate trials).  We are unlikely to question the trial court's discretion in making such rulings if they are based on "any adequate reason apparent from the record."  Resolution Tr. Corp. v. Gold, 30 F.3d 251, 253 (1st Cir. 1994) (motion for leave to amend); see also United States v. Montilla-Rivera, 171 F.3d 37, 40 (1st Cir. 1999) (motion for new trial); Freeman v. Package Mach. Co., 865 F.2d 1331, 1340 (1st Cir. 1988) (district court's judgment regarding the probative value and unfair effect of evidence under Federal Rule of Evidence 403).

## A.    Exclusion and Bifurcation

We begin first with the exclusion in the trial against Henderson of prior complaints against him.  It is difficult to see how such evidence would have been admissible at all.  Certainly it could not have been used to support an inference that because a defendant falsely arrested or hit four other persons in the prior ten years, he likely falsely arrested or used excessive force on the occasion at issue in this case.  See Fed. R. Evid. 404(a), (b)(1).  Lund, therefore, attempts to argue that such evidence would have been probative of Henderson's "motive, opportunity, intent, knowledge and the lack of any mistake in committing the acts complained of," and of the disputed issue of the identity of the arresting officer.  How this is so, Lund does not explain, other than by implying that the evidence showed that Henderson possessed motive, opportunity, and intent on prior occasions, and thus acted similarly here.  This type of reasoning, though, is precisely what Rule 404 precludes.

Lund also seems to argue (though it is not clear) something like the following: Henderson had a motive to lie because there were already prior complaints against him, while the department's policy of covering up his wrongdoing made it plausible that Walcek lied to cover up Henderson's alleged impropriety here.  This seems to be a stretch, and as for Walcek, it seems to suffer from the defect of arguing that Walcek on this occasion behaved as

he did because others on other occasions behaved in an analogous manner.

In any event, even if we assume that the evidence might have had some permissible relevance, it also clearly would have posed a threat of unfair prejudice, thereby triggering the balancing test of Federal Rule of Evidence 403. "[T]he district court has wide discretion in steadying the Rule 403 seesaw." Onujiogu v. United States, 817 F.2d 3, 6 (1st Cir. 1987). More importantly, admitting this evidence would have turned this trial into a series of mini-trials as Henderson contested each of the prior complaints. Rule 403 provides the district court with the discretion to exclude relevant evidence for just these sorts of reasons. See Martínez v. Cui, 608 F.3d 54, 61 (1st Cir. 2010) (excluding testimony that would require a "minitrial"); United States v. Gilbert, 229 F.3d 15, 24 (1st Cir. 2000) (excluding evidence in part because it would lead to a "mini-trial" with "the potential for confusion of the issues and for unfair prejudice"). We review the exercise of such discretion only for its abuse, a "difficult standard[]" for any appellant to meet. United States v. Rodríguez-Soler, 773 F.3d 289, 294 (1st Cir. 2014). This case does not present an "extraordinarily compelling circumstance[]" that would lead us to reverse a district court's judgment about the probative value and unfair effect of evidence. Freeman, 865 F.2d at 1340.

Finally, we reject what appears to be Lund's tit-for-tat argument. Lund's alleged damages included emotional harm, evidence of which was provided by a psychiatrist Lund called to testify. That testimony inevitably covered Lund's pre-existing mental illness and behavior, all of which perhaps could have led jurors to question his credibility. Therefore, he reasons, the district court should have allowed him to offer evidence of prior bad acts by Henderson so that the jury might have reservations about Henderson as well.

The most obvious flaw in this argument is that there is no rule that requires a trial judge to admit evidence of dubious relevance in order to offset possible prejudice caused by clearly relevant evidence on an entirely unrelated point. And the evidence of Lund's prior psychiatric condition was directly relevant to his claimed damages. Moreover, Lund presents on appeal no challenge to the admission of that evidence, nor does he argue that trial of liability and damages should have been bifurcated.

Given our conclusion that the district court did not abuse its discretion in excluding evidence of other allegations against Henderson, Lund's remaining challenges to the district court's trial rulings fall like dominoes. Excluding evidence in the trial against the two officers of complaints against officers other than Henderson and Walcek was, a fortiori, well within the trial court's discretion. And the decision to hold for a second

phase the claims against the Town, in which such evidence might be admissible, was a classic exercise of the trial court's management discretion, see Fed. R. Civ. P. 42(b), especially where there was the possibility that the resolution of the first phase would moot the need for the second phase, Wilson v. Town of Mendon, 294 F.3d 1, 7 (1st Cir. 2002) (discussing how bifurcating trials is common when litigation of one issue may eliminate the need to try another issue). Lund is unable to cite to a case in which we have overturned a district court's grant or denial of a Rule 42 motion to consolidate or bifurcate trials. See, e.g., Gonzalez-Marin, 845 F.2d at 1145 (noting the appellant's "fail[ure] to cite a single case in which an appellate court has reversed a decision for failure to bifurcate" and its own inability "to find any"). The record provides no cause to deviate from that pattern.

## B.   Motion for a New Trial

Lund moved for a new trial under Federal Rule of Civil Procedure 59. We have already disposed of all grounds upon which this motion was based save one: Lund's claim that the verdict was "against the weight" of "uncontradicted and competent medical evidence" provided by Dr. Gilson.[3]

---

[3]    While Lund's failure to move for judgment under Rule 50 precludes him from seeking our de novo review of the sufficiency of the evidence, Unitherm Food Sys., Inc. v. Swift-Eckrich, Inc., 546 U.S. 394, 407 (2006), it does not prevent us from reviewing for an abuse of discretion the ruling on Lund's timely made Rule 59

- 9 -

"A party seeking to overturn a jury verdict faces an uphill battle."  Marcano Rivera v. Turabo Med. Ctr. P'ship, 415 F.3d 162, 167 (1st Cir. 2005).  The officers' testimony provided the jury with ample support for the verdict.  And Dr. Gilson's actual medical testimony, as we have described it above, certainly provided no compelling reason to reject the officers' testimony.  Specifically, Dr. Gilson declined to give an opinion about the cause of Lund's injuries, which was complicated by Lund's degenerative disc disease and prior injuries.  Given the evidence before the jury, the fact that causation and evidence of excessive force were weak at best, and under the highly deferential standard of review we apply, we cannot say the jury's verdict was against the weight of the evidence.  Rather, the evidence amounted to what was at best for Lund a swearing contest, and the jury's resolution was not in his favor.  Therefore the court did not abuse its discretion in denying Lund's motion for a new trial.

## C.   Lund's Motion for Leave to Amend His Complaint

Lastly, the district court did not abuse its discretion in denying Lund's motion for leave to add an "employee negligence" claim under Massachusetts General Law, chapter 258 against the Town and its police chief in the wake of the verdict in favor of the individual police officers.  Lund filed his initial complaint

---

motion for a new trial.  Velazquez v. Figueroa-Gomez, 996 F.2d 425, 427 (1st Cir. 1993).

- 10 -

on August 8, 2011, and did not move for leave to amend until three years later on August 9, 2014.  We have frequently upheld denials of motions for leave to amend for undue delay based on far shorter periods of time.  See, e.g., Calderón-Serra v. Wilmington Tr. Co., 715 F.3d 14, 19–20 (1st Cir. 2013) (just over an eleven month delay); Villanueva v. United States, 662 F.3d 124, 127 (1st Cir. 2011) (per curiam) (four month delay); Kay v. N.H. Democratic Party, 821 F.2d 31, 34–35 (1st Cir. 1987) (per curiam) (three month delay).  "Appreciable delay alone, in the absence of good reason for it, is enough to justify denying a motion for leave to amend." Calderón-Serra, 715 F.3d at 20.

Lund tries to justify his delay by claiming that his motion for leave to amend is being brought under Rule 15(b)(2) to "conform to evidence at trial," and thus he could not have filed the motion prior to the end of the trial, "never mind three years earlier."  We doubt that this motion for leave to amend even gets into the Rule 15(b)(2) batter's box.  Lund seeks to avoid the facts as found by the jury, not add a count that those findings support. In any event, Lund fails to satisfy the rule's requirement that the parties somehow tried this new claim by express or implied consent.  There was certainly no express consent, nor is there any indication of implied consent, which can occur when a claim is "actually [] introduced outside the complaint . . . and then treated by the opposing party as having been pleaded, either

- 11 -

through [the party's] effective engagement of the claim or through his silent acquiescence. . . . [or when] a party acquiesces in the introduction of evidence which is relevant only to that issue." Rodriguez v. Doral Mortg. Corp., 57 F.3d 1168, 1172 (1st Cir. 1995) (internal citations and quotation marks omitted) (quoting DCPB, Inc. v. City of Lebanon, 957 F.2d 913, 917 (1st Cir. 1992)). Lund is simply trying to plead a claim that, if valid, could have been pleaded years earlier. It was well within the district court's discretion to deny his motion for leave to amend.

### III. Conclusion

For the reasons set forth above, the district court did not abuse its discretion in making any of the decisions that are before us on appeal. Finding no reason to disturb the decisions below, we affirm.